POLICE OFFICER — MUNICIPAL LIMITS — PROPRIETARY OR GOVERNMENTAL FUNCTION — QUESTION OF FACT 1. Where a police officer is acting outside of the territorial limits of his employing municipality upon directives of the employing municipality, and he commits some act which gives rise to a claim against the municipality, a factual determination will have to be made in each instance to determine if the police officer was acting in a proprietary or governmental capacity. This determination is necessary in order to determine what limitations, if any, will be imposed on the municipality's liability. 2. Where a police officer is acting outside of the territorial limits of his employing municipality and is doing so on his own volition, a factual situation is presented as to whether or not the police officer is performing some function of the city and, as such, cannot be answered by this office. The Attorney General has considered your request for an opinion wherein you ask, in effect, the following question: Under 11 O.S. 16.4 [11-16.4] (1976), would a liability policy still be in effect if a policeman acting under orders was performing duties outside of his employing municipality and, further, would the liability policy still be in effect if a policeman was acting without orders outside of his employing municipality? You further describe a factual situation where several small adjoining municipalities cooperate with another in the performance of their duties in law enforcement by allowing the police officers of one municipality, upon the request of a second and adjoining municipality, to aid the police officers of the second municipality in their law enforcement duties. Title 11 O.S. 16.4 [11-16.4] (1976), provides as follows: "Every city or town shall provide liability insurance, or self-insurance, in no less an amount than Ten Thousand Dollars ($10,000.00) one person, Twenty Thousand Dollars ($20,000.00) two or more persons, each occurrence for bodily injury and Five Thousand Dollars ($5,000.00) property damage, each occurrence, to compensate persons for bodily injury or property damage proximately caused by any negligent act of a member of a regularly constituted fire department in cities and towns, whether volunteer or part-time or full-time member while in the performance of his duties, police department employee while in the performance of his duties or other municipal employees and officials while in the performance of duties constituting a governmental function of the municipality. The governmental immunity to tort action of a city shall be waived to the extent of the amount of insurance or city provided self-insurance authorized and required herein, but in no case shall such immunity be waived in excess of the coverage, force or effect of such insurance. To the extent that an insurer has provided indemnity for the said employees or any of them for acts proximately caused by the negligence of such employee the said insurer may not, in an action, claim the governmental immunity of a city as a defense. A jury verdict that exceeds the maximum amount of applicable insurance authorized and directed herein shall be reduced by the judgment or award of the court to the applicable limits of coverage authorized and directed herein." There are two decisions by the Oklahoma Supreme Court that are of assistance in answering the question you have presented. In the case of City of Sand Springs v. Gray, 182 Okl. 248,77 P.2d 56 (1938), the City of Sand Springs was operating a part-paid, part volunteer fire department, and in the course of its operations the fire department responded to fires outside of the City limits. The fire department charged a fee for all services rendered outside of the municipal boundaries. In that case, the fire department was involved in an accident outside the City limits while returning from a fire call made outside of the City limits. The facts revealed the City was unable to support a fire department by itself and the City used the revenue from the calls outside of the City to help finance its fire department. The Supreme Court held that since a fee was charged for the calls made outside of the City limits, these calls were done in the private interest of the municipality and in the proprietary capacity of the municipality and, therefore, the City was liable for the accident which had occurred outside of the City limits. In the case of Shearer v. City of Tulsa, 197 Okl. 454,172 P.2d 603 (1946), the City of Tulsa operated a garbage disposal service for the inhabitants of the City. As part of the operation, this City sold and delivered the collected garbage at a point located outside of the City limits. The Supreme Court held that the disposition of the garbage was an essential part of a governmental function and the fact that the City recouped some of the expense of the collection by selling the collected garbage did not convert the governmental function to a proprietary function and, therefore, the City was immune from liability. Prior to the enactment of this section of the statutes, the municipalities of this State were immune from liability for tortious acts committed by their employees while acting in a governmental capacity. With the passage of the statute, the governmental immunity from tort liability for all municipalities is waived only to the extent of the insurance or self-insurance the municipality provides. Where the action of the municipality is one in its governmental capacity, the municipality is liable only in the amount provided in 11 O.S. 16.4 [11-16.4] or to the extent that the municipality's insurance coverage exceeds the statutory minimum. Where the municipality is acting in a proprietary capacity the statutory limitations do not apply. In Opinion of the Attorney General, No. 76-155, this office held that under Section 16.4, supra, governmental immunity from tort liability is waived to the extent of the insurance coverage purchased, regardless of whether the act giving rise to the claim was performed in connection with a governmental or proprietary function. Thus, when a police officer is acting outside of the corporate limits of his employing city upon orders of the city government, a factual determination will have to be made in each case to determine if the function he is performing is proprietary or governmental in nature. This determination is necessary in order to determine what limitations, if any, will be imposed on the municipality's liability. The issue of a policeman acting on his own volition outside of the territorial limits of his employing municipality presents a factual question as to whether or not he is performing some function of the city. Such a factual determination cannot be made in advance and, therefore, this office cannot answer this part of your question. It should be noted from the discussion above that the factual circumstances are determinative in each case and no single statement of the law can be made to cover all factual situations. It should also be noted that should the supposed accident involve a municipal motor vehicle, the provisions of 11 O.S. 16.2 [11-16.2] (1971), may also be involved. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: 1. Where a police officer is acting outside of the territorial limits of his employing municipality upon directives of the employing municipality, and he commits some act which gives rise to a claim against the municipality, a factual determination will have to be made in each instance to determine if the police officer was acting in a proprietary or governmental capacity. This determination is necessary in order to determine what limitations, if any, will be imposed on the municipality's liability. 2. Where a police officer is acting outside of the territorial limits of his employing municipality and is doing so on his own volition, a factual situation is presented as to whether or not the police officer is performing some function of the city and, as such, cannot be answered by this office. (JAMES C. PECK) (ksg)